Herbert BURGESS, Plaintiff,

v.

Sgt. Gary P. MORSE, Superintendent Michael McGinnis, Defendants.

No. 03–CV–6345L.

United States District Court, W.D. New York.

Sept. 22, 2005.

Herbert Burgess, Malone, NY, pro se.

Emil J. Bove, Jr., Office of New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

On June 13, 2005, defendants in this *pro se* civil rights action moved for an order enforcing a settlement agreement that defendants claim resolves the case and requires dismissal of the complaint. Plaintiff, Herbert Burgess, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), opposes the motion on the grounds that no agreement to settle the case was ever reached.

## BACKGROUND

Plaintiff filed the complaint in this action in July 2003, alleging that his constitutional rights were violated when defendant Gary Morse, a correctional officer at Southport Correctional Facility, told another inmate in plaintiff's cell block that plaintiff had informed on the inmate. As a result, plaintiff alleges, he was labeled a "snitch" by his fellow inmates, subjecting plaintiff to harassment and risk of physical harm. Plaintiff also alleges that he asked defendant Michael McGinnis, the Superintendent of Southport, for help in this matter and that McGinnis did nothing.

In a letter dated April 1, 2004, plaintiff informed defendants' counsel, Assistant Attorney General Emil Bove, Jr., that plaintiff "would like to propose a settlement" of this case. Bove Decl. (Dkt.# 22) Ex. A. Specifically, plaintiff asked that he be moved from the Special Housing Unit ("SHU") at Upstate Correctional Facility to a Protective Custody Unit at Clinton Correctional Facility.

Before getting any response from Bove, plaintiff sent him another letter dated June 21, 2004. Plaintiff stated that he was withdrawing his June 1 offer, but he also proposed a new settlement: plaintiff would "discontinue this case for a Special Housing Unit (S.H.U.) time modification of ninety (90) days reduced from my remaining S.H.U. time, and in addition have me moved to another building within the facility." Bove Decl. Ex. B.

Bove responded to plaintiff in a letter dated June 28, 2004, stating, "I am interpreting your proposal to be that you will settle and discontinue this action if DOCS allows you a time cut of 90 days on your current SHU confinements and moves you to another building at Upstate. . . . Please advise if this is not correct." Bove Decl. Ex. C. Bove also noted that although plaintiff's then-current term of SHU confinement was scheduled to end on September 11, 2004, he had another term to serve, which would not end until June 11, 2005. *Id.* Plaintiff replied by letter dated July 1, 2004, stating, "As far as the clarification of the settlement proposal, 'yes' you have interpreted correctly and exactly. Also, the disciplinary history is correct in it's indications of my current S.H.U. confinement terms." Bove Decl. Ex. D.

In a letter dated August 3, 2004, Bove informed plaintiff that DOCS had "decided to accept [plaintiff's] offer . . . ." Bove Decl. Ex. E. He stated that DOCS "has determined you are to receive a ninety day time cut on your current SHU confinement upon execution of a settlement agreement and stipulation of dismissal." Bove added that he had been informed that plaintiff had recently been moved to a different building at Upstate, and that "[a]s a result all you [sic] settlement proposals have been met." *Id.*

By letter dated August 9, 2004, plaintiff told Bove that he had received Bove's August 3 letter. Bove Decl. Ex. F. Three days later, Bove sent plaintiff a written stipulation of settlement and order of dismissal for plaintiff's signature. Bove Decl. Ex. G. The stipulation stated, *inter alia,* that all of plaintiff's claims in this action "are hereby settled in consideration of the determination by DOCS that plaintiff is entitled to a time cut of ninety (90) days from his current term of Special Housing Unit confinement .... " Bove Decl. Ex. G.

On August 17, 2004, plaintiff sent Bove a letter stating that the stipulation of settlement "is acceptable and I *will* sign it and return it to you in approximately thirty (30) days." Bove Decl. Ex. H. Plaintiff stated that the reason he wanted to wait was that his "scheduled facility review" (presumably to determine if his SHU confinement should continue) was coming up in September, and plaintiff did not want that review process to be "disrupted or stalled by any confusion" that might result from the filing of the settlement agreement. He added that "after this scheduled review next month (September) and *regardless* of the results of it, I will sign and return to you the Stipulation of Settlement and Order of Dismissal promptly." *Id.*

In a letter dated September 23, 2004, plaintiff informed Bove that "some unexpected delay has occurred concerning my S.H.U. time cut review," and that as soon as plaintiff was informed of the review committee's decision, plaintiff would "be contacting [Bove] concerning [the] settlement agreement .... " Bove Decl. Ex. I. He added that the settlement agreement "may need to call for a little more of an S.H.U. time cut." Plaintiff stated that he was "going to try [his] hardest to stick to the agreement," but that when he eventually signed and returned the written settlement agreement to Bove, "the time cut number may or may not be changed." *Id.*

On September 29, 2004, plaintiff again wrote to Bove, stating that "the time cut in our agreement may need to be changed. As it turns out it will need to be increased by 18 months, making it a total modification or time cut of 21 months." Bove Decl. Ex. J. Plaintiff explained that his "whole purpose for agreeing to the 90 day cut at the beginning was so [that he] could be released from this S.H.U. as quickly as possible," but that this "purpose would be defeated if [he] were to accept the 90 day time cut" because plaintiff's SHU time had been extended as the result of a "mental stress episode." *Id.*

By letter dated October 22, 2004, Bove told plaintiff that his "attempt to change the terms of the settlement is not acceptable," and that Bove "expected [plaintiff to] live up to the terms of [the] agreement." Bove Decl. Ex. L. Bove again sent a proposed stipulation of settlement and order of dismissal with the 90–day time cut language of the original. It does not appear that plaintiff responded to this letter.

The record shows that plaintiff did receive a time cut, albeit not pursuant to the settlement agreement. On May 24, 2004, plaintiff wrote to the facility superintendent, asking for discretionary review of his SHU sentence. Bove Decl. Ex. N. By memorandum dated June 9, 2004, plaintiff was informed that his request had been denied. Bove Decl. Ex. O. On September 14, 2004, though, apparently pursuant to a previously scheduled review, the superintendent issued plaintiff an 18–week time cut of his SHU confinement. Bove Decl. Ex. P.

## DISCUSSION

A threshold question, though one not raised by either side in this case, is whether the Court should apply federal or state

law in determining whether the parties entered into an enforceable settlement agreement. Although the Second Circuit has not yet decided the issue, *see Ciaramella v. Reader's Digest Assoc., Inc.,* 131 F.3d 320, 322 (2d Cir.1997), most courts of appeals appear to be of the view that state law governs this issue. *See Makins v. District of Columbia,* 277 F.3d 544, 548 (D.C.Cir.2002) (noting that "[t]he Seventh, Eighth, Tenth, and Eleventh Circuits, and perhaps the Third, Fourth, and Ninth, now look to state law in determining if a valid and enforceable settlement agreement exists"; collecting cases). District courts from within the Second Circuit have taken differing approaches; *compare Citizens Bank and Trust Co. v. Se–Fish Associates,* No. 99–CV–0417, 2003 WL 22383564, at *4 (W.D.N.Y. Sept. 30, 2003) ("In deciding the parties' motions to enforce the Agreement, the Court will look to the general principles of New York contract law"), *with Kilcullen v. Metro North Commuter Railroad Co.,* No. 95 CIV. 6331, 1998 WL 647171, at *5 (S.D.N.Y. Sept. 22, 1998) ("Since this case is brought solely under federal statutes, federal common law determines whether Kilcullen, Metro North, and Cigna reached an enforceable settlement agreement").

■ As did the Court of Appeals in *Ciaramella,* however, I find it unnecessary to decide that question here, because the governing principles are essentially the same under both federal and New York law. *See Ciaramella,* 131 F.3d at 322 (stating that "there is no material difference between the applicable state law or federal common law standard"); *Francis v. Home Box Office, Inc.,* No. 04 Civ. 7430, 2005 WL 1020863, at *2 (S.D.N.Y. April 28, 2005) ("The Second Circuit has noted that [the relevant] inquiry is the same regardless of whether New York law or federal common law is applied, because both systems apply the same standard") (citing *Ciaramella,* 131 F.3d at 322).[1] Under that standard, "settlement agreements are contracts that must be interpreted 'according to general principles of contract law.' " *Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir.1999); *see also Geller v. Branic Int'l Realty Corp.,* 212 F.3d 734, 737 (2d Cir.2000) ("We have often compared stipulated settlements to contracts, and we have consistently applied the law of contract to disputes concerning the construction and enforcement of settlements").

■ The Court of Appeals has "articulated four factors to guide the inquiry regarding whether parties intended to be bound by a settlement agreement in the absence of a document executed by both sides." *Ciaramella,* 131 F.3d at 323. In conducting that inquiry, the court must consider:

---

1. The only significant difference between federal and New York law in this regard is that Rule 2104 of New York's Civil Practice Law and Rules, unlike federal law, provides that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." While some federal courts in New York have applied Rule 2104, *see, e.g., Rosenberg v. Inner City Broadcasting Corp.,* No. 99 CIV 9579, 2001 WL 995349, at * 2 (S.D.N.Y. Aug. 30, 2001), the Second Circuit has not decided whether the rule applies in federal cases. *See Ciaramella,* 131 F.3d at 322 n. 1 (stating that Rule 2104 "may ... apply," but finding it unnecessary to address whether the rule "is consistent with federal policies favoring settlement," since under common law contract principles, parties never formed an agreement in the first place). As explained in the body of this Decision and Order, I likewise find that no enforceable agreement was ever formed here, making compliance with C.P.L.R. § 2104 immaterial.

(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. No single factor is decisive, but each provides significant guidance.

*Id.* (citation omitted).

Applying these principles here, I find that the parties never entered into a valid and enforceable settlement agreement. First, in his August 3, 2004 letter informing plaintiff that DOCS had accepted plaintiff's settlement offer, Bove stated that DOCS had "determined you are to receive a ninety day time cut on your current SHU confinement *upon execution of a settlement agreement and stipulation of dismissal.*" Dkt. # 22 Ex. E (emphasis added). This clearly indicates that DOCS would not perform its obligations under the agreement until *after* the document memorializing the settlement had been signed by plaintiff. *See* Oxford English Dictionary Online, *http://dictionary. oed. com/* (defining "upon" as meaning, *inter alia*, "Immediately after; following on"); *Ciaramella*, 131 F.3d at 322 ("if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then"); *Lambert Corp. v. Evans*, 575 F.2d 132, 135 (7th Cir.1978) ("Even if the parties agree, point by point, on all the terms of a contract, if they understand that the execution of a formal document shall be a prerequisite to their being bound there is no contract until the document is executed").

■ Second, I am not persuaded by defendants' contention that DOCS has performed under the settlement agreement. Although plaintiff apparently was moved to a different building at Uptate in 2004, which had been one of his conditions of settlement, Bove's August 3 letter to plaintiff, in which he stated, "I understand that you were recently moved" to a different building, indicates that the move was unrelated to the settlement discussions, since it occurred before plaintiff was even informed that DOCS was prepared to accept his offer. Like any contract, a settlement agreement requires that there be consideration on both sides, and if plaintiff was moved for reasons not connected to the settlement, it is difficult to see how that move could be deemed consideration for anything.

More importantly, it does not appear that DOCS ever did give plaintiff the 90–day cut that he had asked for. Plaintiff was granted an 18–week time cut on September 14, 2004, but again, that does not appear to have been connected with the settlement agreement. For one thing, that was a 126–day, not a 90–day, time cut as called for by the proposed settlement agreement. Second, plaintiff's letters to Bove indicated that plaintiff did not even want the officials who were considering whether to reduce his SHU confinement term to know about the pending settlement agreement, lest the review process be "disrupted or stalled" by the filing of the agreement.

Aside from that 18–week time cut, which was evidently part of a regularly scheduled review process rather than a purposeful fulfillment of DOCS' obligations under the settlement agreement, it does not appear that DOCS ever did grant plaintiff a 90–day time cut, as provided by the proposed settlement agreement. Again, that is consistent with the terms of the agreement itself, which provided that DOCS would issue the time cut *after* execution of the agreement and a stipulation of dismissal. *See Kingvision Pay Per View Corp. v.*

*Mardi Gras, Inc.,* 185 F.Supp.2d 1340, 1343 (M.D.Ga.2002) (finding "that there was no settlement because the settlement agreement was never consummated," and noting a dictionary definition of "consummate" as "to finish by completing what was intended; bring or carry to utmost point or degree; carry or bring to completion; finish; perfect; fulfill; achieve"). Indeed, it would seem foolish (and highly unlikely) that DOCS would knowingly carry out its obligations under a proposed or tentative settlement with an inmate plaintiff without having first received a signed settlement agreement and stipulation of dismissal from the inmate, since the inmate at that point would have no incentive to hold up his end of the bargain by agreeing to dismissal of his complaint.

As for the third factor, it does appear that, for a short time at least, both sides did agree on the terms of the proposed settlement. Once plaintiff's circumstances changed regarding the duration of his SHU confinement, however, that agreement quickly evaporated.

Finally, by defense counsel's own admission, "it is the practice of the State to commit settlement agreements to writing ...." Bove Decl. at 4. That was, in fact, what defendants attempted to do here, but plaintiff refused to sign the proposed agreement, and defendants would not accept plaintiff's proposed changes.

While the Court is mindful of the "strong judicial policy in favor of settlements," *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2d Cir.1998), that does not mean that I can enforce a settlement agreement that never truly existed. The two sides here may have come tantalizingly close to reaching an agreement to end this litigation, but for the reasons stated, I conclude that they failed to do so.

## CONCLUSION

Defendants' motion to enforce the settlement agreement (Dkt.# 21) is denied.

IT IS SO ORDERED.