Marianne DAVIS, Appellant,

v.

George WINFIELD, et al., Appellees.

No. 90–CV–115.

District of Columbia Court of Appeals.

Submitted March 11, 1992.
Decided Sept. 21, 1995.

Marianne Davis, pro se.

No brief was filed on behalf of appellees.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

This is an appeal from a judgment in an action for breach of contract, entered in the Small Claims Branch of the Superior Court. Appellant raises three claims of error. We hold that two of them are meritorious, and thus we reverse the judgment and remand this case for a new trial, or for such other proceedings as may be appropriate.

I

Appellant Davis owns a three-bedroom house on Fifth Street, N.W. In late June 1988 appellees George Winfield, Austin Winfield, and Shawn McCurdy each submitted to Mrs. Davis rental applications which communicated their joint intent to rent the Fifth

Street house. George Winfield gave Mrs. Davis a $735 security deposit on the house to ensure its availability. Mrs. Davis testified that all three prospective tenants "acknowledged [at the June meeting] that they were to make three payments prior to taking occupancy of the premises." At a later date each of them signed a lease agreement which more specifically outlined each party's obligations, and Shawn McCurdy gave Mrs. Davis a second $735 payment, as the lease required. Several handwritten changes in the lease were separately initialed by all four parties. The copy of the lease that Mrs. Davis attempted to introduce into evidence at trial did not bear her signature, although it was signed by McCurdy and the two Winfields.

The three prospective tenants were scheduled to move in on August 14, and on August 12 they met with Mrs. Davis to make final arrangements for the move and to pick up the keys. At that meeting, however, the prospective tenants raised an objection to a further $735 payment[1] and thereafter left the meeting without taking possession of the house. Later the same day they made arrangements to rent other living quarters.

The prospective tenants sued Mrs. Davis in the Small Claims Branch for $2,000, representing the amount that they had paid her in anticipation of renting the Fifth Street house ($1,470) plus other unspecified damages. Mrs. Davis thereafter filed a counterclaim for $1,403 in damages arising from the plaintiffs' alleged breach of the rental contract. Third-party defendants Sinette Winfield and Charlotte Jones, the mothers of the respective plaintiffs and co-signers of the lease agreement, were added on Davis' motion.[2] Mrs. Davis then moved for leave to amend her counterclaim by increasing to $10,000 the amount of requested damages, alleging that the plaintiffs' breach of the rental contract had caused her to develop a heart condition. She also asked that the case be transferred from the Small Claims Branch to the Civil Division.

After a hearing, the trial judge denied the motion to amend the counterclaim on the ground that Mrs. Davis had not proffered any admissible evidence of her medical condition. The judge then tried the case on the merits and found as a fact that there was no contract between the parties because Mrs. Davis had not signed the copy of the lease that she attempted to introduce into evidence. The judge also denied her an opportunity to present the testimony of a witness who had been subpoenaed at her request, ruling that the subpoena was invalid because it had not been signed by a Superior Court judge. The judge accordingly entered judgment for the plaintiffs on their claim, with interest from the date of their first payment to Mrs. Davis. He also ruled for the plaintiffs on Mrs. Davis' counterclaim and dismissed her third-party claim against the two mothers. We granted Mrs. Davis' application for allowance of an appeal.[3]

II

This court has consistently held that "leases of urban dwelling units are to be

---

1. The lease required the payment of rent for the last month of the tenancy ($735) in addition to a security deposit in the same amount, and the rental application required, in addition, a deposit of the first month's rent. The nature of the tenants' objection is not entirely clear from the record, but it appears that they believed they could not be required to pay more than one month's rent in advance as a security deposit. Mrs. Davis maintained, however, that the payment she claimed they still owed her was not a security deposit but merely a pre-payment of the final month's rent, in accordance with the lease.

The trial court, in ruling against Mrs. Davis, cited 14 DCMR § 308.2 (1991), which provides that "any security deposit ... required by an owner as security for performance of the tenant's obligations in a lease or rental of a dwelling unit shall not exceed an amount equivalent to the first full month's rent...." The court did not find as a fact, however, that the third payment (which was never made) was a security deposit within the meaning of the regulation, nor was there evidence which would support such a finding. Whether the third payment was a permissible pre-payment of the last month's rent or an impermissible security deposit (impermissible because one $735 payment was all that the regulation would allow) is still an unresolved issue.

2. Although there were three prospective tenants, there were only two mothers, since George and Austin Winfield are brothers.

3. See D.C.Code § 11–721(c) (1995).

construed as any other contract." *Management Partnership, Inc. v. Crumlin*, 423 A.2d 939, 941 (D.C.1980) (citing *District of Columbia Dep't of Housing v. Pitts*, 370 A.2d 1377, 1379 (D.C.1977)). "One of the essential elements for formation of a contract"—the only one in dispute here—"is a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms." *Klein v. Weiss*, 284 Md. 36, 63, 395 A.2d 126, 141 (1978) (citations omitted), cited with approval in *Owen v. Owen*, 427 A.2d 933, 937 (D.C. 1981). Mutual assent to a contract, often referred to as a "meeting of the minds," is most clearly evidenced by the terms of a signed written agreement, but such a signed writing is not essential to the formation of a contract. The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds: "[t]he intentions of parties to a contract must be determined not only from the terms of the written agreement but also from the actions of the parties in relation thereto." *Bergman v. Parker*, 216 A.2d 581, 583 (D.C.1966) (footnote omitted); *accord, William P. Lipscomb Co. v. Kaldenbach & Wysong, Inc.*, 187 A.2d 124, 125 (D.C.1962).

■ When the parties to a contract set forth the terms of their agreement in writing and manifest in some manner a clear intent to be bound, the absence of one party's signature on the written agreement will not defeat or invalidate the contract. The purpose of a signature is simply to demonstrate mutual assent to a contract, but that may be shown instead, or in addition, by the conduct of the parties. *See Porter v. General Boiler Casing Co.*, 284 Md. 402, 410, 396 A.2d 1090, 1095 (1979).

■ The issue before the trial court was whether Mrs. Davis and the three plaintiffs meant to be bound by the lease—*i.e.*, whether a contract ever existed between them. Each plaintiff signed both a rental application and a lease, evidencing an intent to rent

the house from Mrs. Davis. The plaintiffs then sent the lease to their mothers to co-sign, which both mothers did. In addition, the plaintiffs tendered $1,470 to Mrs. Davis in two installments before the final meeting on August 12; such part performance of their obligation under the lease is further evidence of an intent to be bound. Mrs. Davis, in turn, accepted the plaintiffs' part performance and removed the house from the rental market in reliance on their anticipated fulfillment of their contractual obligations. Indeed, she apparently was prepared to turn over the keys to the house to them on August 12 when they suddenly objected to the additional $735 payment and walked away from the transaction. The evidence also showed that Mrs. Davis and each of the plaintiffs initialed several handwritten changes in the lease agreement.

The trial court refused to admit into evidence the copy of the lease that Mrs. Davis proffered because she herself had not signed it. This ruling, we conclude, was error. Mrs. Davis' failure to sign her copy of the lease was not determinative of the validity or the existence of the contract, and thus the court erred in refusing to admit that document as evidence of the parties' intent. Given the other uncertainties in the record,[4] we cannot say that this error was harmless, especially when the court apparently gave dispositive weight to the lack of a written agreement. Accordingly, we must reverse the judgment and remand for a new trial on all issues, including specifically whether there was or was not a legally binding agreement between the parties.

### III

■ The rules governing the Small Claims Branch make certain Superior Court Rules of Civil Procedure applicable in small claims proceedings. *See* Super.Ct.Sm.Cl.R. 2. One of those applicable rules is Civil Rule 45, subsection (a) of which provides in part:

> Every subpoena shall be issued by the Clerk under the seal of the Court. . . .

---

4. For example, there was a dispute over whether the signatures of the plaintiffs' mothers had been obtained to Mrs. Davis' satisfaction. The evidence was also quite vague as to the dealings

between the parties before the August 12 meeting. If the case is retried, we would expect clearer proof, and perhaps a finding, as to when the contract (if any) actually came into being.

The Clerk shall issue a subpoena, or a subpoena for the production of documentary evidence, signed and sealed but otherwise blank, to a party requesting it, who shall fill it in before service.

The corresponding federal rule, FED.R.CIV.P. 45, contains materially identical language.[5] In practice, what both rules mean is that the clerk of the court merely issues a blank subpoena to any litigant who wants one.

Mrs. Davis complied with Super.Ct.Civ.R. 45 in her request for a subpoena *duces tecum*, but the subpoenaed witness was not allowed to testify or present documents.[6] The trial judge prevented him from testifying by erroneously ruling that the subpoena was invalid because it had not been signed by a Superior Court judge. This ruling was contrary to the plain language of Rule 45 and contrary to long-established practice in the Superior Court.

 We need not decide whether this error, standing alone, would be sufficient to require reversal. Since we are reversing the judgment on another ground, we simply note that the trial judge erred in refusing to allow the subpoenaed witness to testify and direct the court in any future proceeding to recognize the validity of the subpoena.[7]

## IV

The judgment of the trial court is reversed, and the case is remanded for further proceedings.

*Reversed and remanded.*

---

**5.** FED.R.CIV.P. 45(a)(3) provides in part: "The clerk shall issue a subpoena, signed but otherwise in blank, to a party requesting it, who shall complete it before service."

**6.** The subpoenaed witness was the manager of an apartment building who had rented an apartment to the plaintiffs after they walked away from the alleged contract with Mrs. Davis.

**7.** Mrs. Davis' third claim of error has no merit. She sought to introduce into evidence a medical record which would allegedly show a causal connection between the plaintiffs' alleged breach of the rental contract and her heart condition, but the trial court excluded it on the ground that it was not properly authenticated. Super.Ct.Civ.R. 43–I(a) requires the party seeking admission of a business record to establish its authenticity through a competent witness. We recognize that the rules of procedure and evidence are applied more flexibly in the Small Claims Branch than in other parts of the trial court. *See* Super.Ct.Sm.Cl.R. 12(b). Nevertheless, given the record before us, we can find no abuse of discretion in the trial court's refusal to admit the medical record into evidence because Mrs. Davis failed to present a doctor or other competent witness to authenticate it. *See, e.g., Meaders v. United States*, 519 A.2d 1248, 1255–1256 (D.C. 1986).