**Sharon EKEDAHL, Appellee,**

v.

**CORESTAFF, INC., Appellant.**

**No. 98–7119.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 12, 1999.

Decided July 30, 1999.

---

R. Glen Rigby argued the cause for appellant. With him on the briefs were Thad T. Dameris and Tegan M. Flynn.

Eugene R. Fidell argued the cause for appellee. Deborah L. Pollock was with him on the brief.

Before: WILLIAMS, SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

A jury awarded plaintiff Sharon Ekedahl $661,875 in a breach of contract action against defendant COREStaff, Inc. COREStaff challenges the district court's denial of its motion for judgment as a matter of law, asserting that there was no stock options contract between the parties, both because there was no agreement on an essential term and because the alleged contract did not satisfy the Statute of Frauds. We conclude that there was no agreement on an essential term regarding the vesting of the stock options. We therefore reverse the judgment of the district court and remand for further proceedings.

I

COREStaff, Inc. is a temporary staffing agency with its principal place of business in Houston, Texas. Ekedahl is a resident of the District of Columbia. In January 1995, Michael Willis, the President and Chief Executive Officer of COREStaff, approached Ekedahl to discuss future employment with the company. At the time Willis approached her, Ekedahl was employed as a Vice President at Adia Personnel Services, one of COREStaff's competitors. Ekedahl had worked at Adia for over ten years, and was receiving an annual salary and bonuses totaling over $200,-000, as well as a package of stock options. Ekedahl discussed the proposed employment with Willis and other COREStaff representatives over the ensuing several months.

On September 12, 1995, COREStaff sent Ekedahl a letter making a formal offer of employment. The letter stated that Ekedahl would have the title of Senior Vice President, and described the position's base salary, bonuses, vacation, and insur-

ance benefits. In the provision central to this case, it further stated: "Stock Options—15,000 shares to be granted immediately." App. 22. The letter contained signature lines for both Ekedahl and Willis, preceded by the phrase "Accepted by and agreed to." *Id.* Both Willis and Ekedahl signed and dated the letter.

On November 1, 1995, Ekedahl began her employment with COREStaff. On November 9, COREStaff sent Ekedahl a letter, stating that she was "being granted an option for 15,000 shares at the IPO price per share of $17.00" and that she would receive a stock option agreement pursuant to which her options would "vest equally over a three (3) year vesting period" and be exercisable over a ten year period. *Id.* at 26.[1] Shortly thereafter, Ekedahl received a draft of COREStaff's standard employment agreement. *Id.* at 27–31. Under this agreement, "[v]esting for such stock options [would] occur over a three (3) year period, with one-third vesting on the first anniversary of employment, ⅓ vesting on the second anniversary of employment, and the final ⅓ vesting on the third anniversary of employment." *Id.* at 30. The agreement also indicated that "[t]he exact terms and conditions of the stock options ... [would] be set forth in the COREStaff, Inc. 1995 Long–Term Incentive Plan and a Stock Option Agreement by and between Employee and the Company." *Id.*

Ekedahl testified that she was surprised to receive these documents, particularly because they indicated that her options would vest in the future. She told Willis and COREStaff's general counsel, Peter Dameris, that the vesting provisions were not consistent with the September 12 letter. Willis indicated that Ekedahl should have known there would be vesting restrictions, but also said he would "work on accelerating this." 1/27/98 p.m. Tr. at 7.

Dameris informed her that as a matter of policy, COREStaff did not give immediately-vested options.

On November 20, COREStaff sent Ekedahl a copy of the stock options agreement for execution. App. 37–41. Like the November 9 letter and the proposed employment agreement, this document provided that the options would vest in the future. *Id.* at 38. Ekedahl did not sign either the proposed employment agreement or the stock options agreement, maintaining that they contained vesting provisions that were inconsistent with the September 12 letter. She continued to work for COREStaff until May 10, 1996, at which point COREStaff dismissed her for other reasons.

After she left the company, Ekedahl brought a diversity action in district court, alleging breach of contract by COREStaff and fraudulent misrepresentation by COREStaff and Willis. The contract claim principally alleged that COREStaff breached its agreement to grant Ekedahl immediately-vested stock options. The district court dismissed the fraudulent misrepresentation claim prior to submitting the case to the jury. After a three week trial, the jury returned a verdict for Ekedahl on the contract claim.

After the verdict, COREStaff renewed its earlier motion for judgment as a matter of law. COREStaff argued that no reasonable jury could find a meeting of the minds between the parties with respect to the immediate vesting of Ekedahl's stock options. It also argued that a provision of the then-effective District of Columbia Statute of Frauds, D.C. CODE ANN. § 28:8–319(1) (1995), would preclude enforcement of the purported options agreement because there was no writing that described

---

1. A stock option grants an employee the right to buy a specific stock at a stated price at any time during a specified (exercise) period, regardless of the prevailing market price. *See* AMERICAN BANKERS ASS'N, BANKING TERMINOLOGY 232 (1981). Once the right becomes vested, it is no longer contingent upon, for example, the employee's continued employment with the company. *Id.* at 254. Vesting may be total and immediate, graduated over a period of years, or may occur upon the completion of stated service or participation requirements. *Id.*

or indicated the price of the securities to be given to Ekedahl.

The district court denied COREStaff's motion, concluding that the jury could have found an agreement for immediate vesting based on the provision in the September 12 letter stating that the 15,000 shares were "to be granted immediately," together with Ekedahl's testimony that she would not have left Adia without an agreement for immediate vesting. The court also rejected COREStaff's Statute of Frauds argument. This appeal followed.

## II

■ When reviewing a district court's ruling on a motion for judgment as a matter of law, this court "evaluate[s] *de novo* whether the prevailing party proffered sufficient evidence upon which a jury could properly base a verdict in its favor." *Bennett Enter., Inc. v. Domino's Pizza, Inc.,* 45 F.3d 493, 497 (D.C.Cir.1995). We view the evidence "in the light most favorable to the prevailing party, and the jury's verdict must stand unless the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided" that we cannot conclude a reasonable jury could have reached that verdict. *Id.*

■ Under District of Columbia law, the party asserting the existence of an enforceable contract has the burden of proving that there has been agreement—a "meeting of the minds"—as to all material terms. *See Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1238 (D.C.1995); *Davis v. Winfield,* 664 A.2d 836, 838 (D.C.1995). "Where the parties fail to agree to all material terms, no contract is formed...." *Jack Baker,* 664 A.2d at 1239; *see Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 547 (D.C.1981). Proof of a meeting of the minds may be found either in the written agreement or, if the agreement is ambiguous, in the parties' actions at the time of contract formation. *See Davis,* 664 A.2d at 838; *Nofziger Communications, Inc. v. Birks,* 989 F.2d 1227, 1230 (D.C.Cir.1993).

In the instant case, it is clear that the vesting of the stock options was a term material to the alleged options agreement between Ekedahl and COREStaff. Ekedahl testified that her belief that the options would vest immediately was critical to her decision to leave her job at Adia and begin working at COREStaff. *See* 1/27/98 a.m. Tr. at 12–13 (stating that she "absolutely [would] not" have accepted the September 12 offer if it indicated the options would vest in future); 1/28/98 p.m. Tr. at 75 (describing absence of vesting restrictions as "the turning point" in her acceptance of offer). COREStaff witnesses, on the other hand, testified that a delayed vesting structure was an integral part of the company's Long–Term Incentive Plan, and that the company did not generally offer immediately-vested options. *See* 2/4/98 p.m. Tr. (pt. 1) at 47–49; 2/5/98 Tr. at 56. Given the significance that both parties placed on the presence, or absence, of immediate vesting, it follows that vesting was a material term as to which COREStaff and Ekedahl had to be in agreement in order to reach a binding contract.

■ The record, however, is devoid of any evidence that the parties reached an agreement on vesting. The only reference to stock options in the September 12 letter states: "Stock Options—15,000 shares to be granted immediately." App. 22. Ekedahl made clear at oral argument that she does not contend that the term "granted" meant "vested," and that she understood that an option could be granted immediately without vesting immediately. *See supra* note 1; *see also* Ekedahl Br. at 29–30; 1/27/98 a.m. Tr. at 12. Indeed, she had received several documents in connection with her Adia stock options that distinguished between the two terms. *See, e.g.,* Joint Exs. 45, 48. The parties' written agreement, therefore, is silent as to vesting.

Nor is there any evidence that the parties orally agreed on a vesting provision. To the contrary, Ekedahl's testimony

makes clear that she never discussed vesting with COREStaff at all:

Q: So the record and I are very clear on this, at the time that you signed the agreement, ... dated September 12, 1995, you had absolutely no discussion whatsoever with Mike Willis, or anyone else at COREStaff, about vesting, isn't that correct?

A: That's correct.

Tr. 1/28/98 p.m. at 16–17; *see also* Tr. 1/27/98 a.m. at 8. COREStaff's testimony was in accord. *See* 2/2/98 p.m. Tr. (pt. 2) at 33, 35. As the District of Columbia Court of Appeals has said, "[t]he failure to ... even discuss an essential term of a contract may indicate that the mutual assent required to make or modify a contract is lacking." *Owen v. Owen,* 427 A.2d 933, 937 (D.C.1981). In this case it surely does.

There is also no evidence to support Ekedahl's contention that COREStaff knew it was only the prospect of immediately-vested options that made its offer better than her current compensation package at Adia, and hence knew that such a provision was the critical inducement in luring her away. As already noted, the parties agree that vesting was never discussed. Ekedahl further testified that she had no conversations with COREStaff regarding the value of her Adia stock options. 1/28/98 a.m. Tr. at 52–53. Indeed, not only is there no evidence that COREStaff had compared or could compare the value of the two packages, there was no evidence from which the jury itself could make such a comparison. As Ekedahl conceded at oral argument, she never introduced any evidence as to the total value of her Adia compensation package, particularly its stock options. Hence, there was no evidence from which the jury could conclude that only with an immediate-vesting provision would the COREStaff package have been worth more than the compensation Ekedahl was receiving from Adia.

Both Ekedahl and COREStaff make arguments that could be read as urging us to adopt default rules to apply whenever a contract is silent as to vesting. Ekedahl characterizes delayed vesting as a "restriction," and argues that the failure expressly to include such a restriction denotes its absence. But to support such a default rule, Ekedahl would have to offer evidence that immediate vesting is the background norm for personnel agreements, which she wholly failed to do. Even her own Adia options contained delayed vesting schedules. COREStaff, on the other hand, suggests the opposite default rule—that in the absence of a provision providing for immediate vesting we should presume that vesting is to be delayed. Like Ekedahl, however, COREStaff offers no evidence that this is the industry standard. Indeed,COREStaff has itself entered into immediate-vesting agreements upon occasion. App. 16. Accordingly, we decline each party's invitation to fashion a default rule and restrict our decision to the documents and testimony before us in this case.

## III

We conclude that the vesting of the stock options was a material term of the putative options contract between Ekedahl and COREStaff, and that there is no evidence the parties reached a meeting of the minds as to that term. This in turn compels the conclusion that, as a matter of law, there was no contract between the parties with respect to the vesting of the options. There being no contract, we need not consider whether the parties' various writings were sufficient to satisfy the Statute of Frauds.

One final issue requires attention before we can specify a disposition for this appeal. COREStaff's briefs here and its motion for judgment as a matter of law below focus exclusively on the parties' failure to reach an enforceable agreement with respect to the stock options. Ekedahl, however, contends that her breach of contract claim had two components, stock options and severance pay. Ekedahl Br. at 3, 5. The district court's jury instructions made refer-

ence to both issues: if the jury found a breach of an enforceable options agreement, it was directed to award Ekedahl an amount that would make her whole; if it found a breach of an enforceable agreement for severance pay, it was directed to award her the sum of $67,500. App. 168, 169. Although the verdict form only referred specifically to stock options, the final interrogatory simply asked the jury to state a sum of money that "would fairly and reasonably compensate Sharon Ekedahl for her damages ... that resulted from [COREStaff's] failure to comply with the agreement." *Id.* at 154. Hence, we cannot determine whether the jury's answer of $661,875 included an award of severance pay.

Since we have heard no argument regarding severance pay on this appeal, we limit our ruling to Ekedahl's claim to immediately-vesting stock options. In that respect, we reverse the judgment of the district court. We remand the issue of severance pay for further proceedings.

*Reversed and remanded.*