Arthur F. HOOD et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA et al., Defendants.

No. Civ.A. 94–1792(RMU).

United States District Court, District of Columbia.

July 25, 2002.

Sherman Robinson, Washington, D.C., for plaintiffs.

John J. Grimaldi, II, Eugene A. Adams, Assistant Corporation Counsels, Washington, DC, for defendants.

## MEMORANDUM OPINION

### DENYING THE PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

URBINA, District Judge.

## I. INTRODUCTION

This case requires the court to examine whether the parties had a sufficient meeting of the minds to reach a settlement on the eve of trial. Arthur Hood, Jessie Smith, and Susie Thomas (collectively, "the plaintiffs") bring this action under the First, Fifth, and Fourteenth Amendments of the Constitution, 42 U.S.C. §§ 1983,

1985(3), 1986, and 1988, and for intentional infliction of emotional distress. As three former D.C. Department of Corrections employees, the plaintiffs claim that the defendants wrongfully terminated them without prior notice or the opportunity to challenge the dismissals in retaliation for speaking to the media about the city's halfway-house system.

The case was set for trial in October 2001. Five days before trial, the parties reached a tentative agreement and submitted a joint motion to dismiss the action without prejudice and to vacate the trial date. This court granted the motion. During the next few months, the parties' views about the specific terms of the putative settlement agreement began to diverge. The plaintiffs have now filed a motion to enforce a settlement agreement that includes both a financial payment to the plaintiffs and their re-enrollment into the retirement system.[1] After reviewing the submissions of both parties, the court concludes that while the parties agreed to the monetary portion of the settlement, they never reached an accord regarding another material part of the agreement— the plaintiffs' re-enrollment into the retirement system. Accordingly, the court denies the plaintiffs' motion to enforce the settlement agreement.

## II. BACKGROUND

In March and December of 1993, the plaintiffs appeared on a local television station and *Sixty Minutes* to discuss conditions in the D.C. halfway-house system.

Pls.' Mot. to Enforce the Settlement Agreement ("Pls.' Mot.") at 3. Mr. Hood claims that the defendants fired him in November 1993 in retaliation for these appearances. *Id.* Mr. Smith and Ms. Thomas assert that the defendants terminated them in April 1994 for the same reason. *Id.* The plaintiffs claim that they did not receive timely notice of their terminations. *Id.*

Before the October 2001 trial date, the parties appeared to reach a settlement agreement. *Id.* Negotiations had lasted nearly a year, first for three sessions under the supervision of Magistrate Judge Kay and then for five sessions under the supervision of Magistrate Judge Facciola.[2] *Id.;* Defs.' Partial Opp'n to Pls.' Mot. ("Defs.' Opp'n") at 2. The parties do not dispute that under the terms of the tentative settlement agreement, the plaintiffs agreed to dismiss their First Amendment claims in exchange for $625,000. Pls.' Mot. at 4; Defs.' Opp'n at 2. On October 17, 2001, the court granted a joint motion to dismiss the complaint without prejudice and to vacate the trial date. Order dated Oct. 17, 2001.

Over the next four months, the plaintiffs claim that the parties engaged in a series of telephone calls and discussions concerning Mr. Hood's and Mr. Smith's re-enrollment into the retirement system. Pls.' Mot. at 8. The plaintiffs insist that re-enrollment was "the second part of the negotiation." *Id.* at 4. The plaintiffs contend that Deputy Corporation Counsel Eugene Adams assured them that "no prob-

---

1. The plaintiffs call their motion the "Plaintiffs' Motion to Vacate Dismissal and Enforce Settlement Agreement." For the sake of clarity, the court will refer to the plaintiffs' motion as the "Plaintiffs' Motion to Enforce the Settlement Agreement."

2. For the record, the court notes that, as usual, the work of the Magistrate Judges in

bringing these two parties together was invaluable. Indeed, all three of the Magistrate Judges in the United States District Court for the District of Columbia are remarkably adept at helping to resolve cases before trial, providing an enormous service to the parties who come before this court, to the members of the bar, and to the District Judges.

lems were anticipated," "re-enrollment in the system had been permitted in other cases," and "he would advise plaintiffs' counsel when such process had been completed." Pls.' Reply to Defs.' Opp'n ("Pls.' Reply") Ex. A ("Hood Decl.") at ¶ 4. Between December 2001 and January 2002, Mr. Adams informed the plaintiffs that "the government had issues with allowing the plaintiffs to participate in a retirement program during a time in which they were not working." *Id.* at 5.

On or about January 15, 2002, the defendants allegedly sent the plaintiffs a retirement deposit application form. Pls.' Mot. at 8. The plaintiffs refused to complete the application since they claim that the defendants had not completed the first step in the process of ordering the plaintiffs' personnel files. *Id.* at 6. On February 19, 2002, the plaintiffs filed their motion to enforce a settlement agreement that includes both a money component and their re-enrollment. *Id.* at 1. They believe they have an "unconditional right" to retirement benefits under D.C.Code § 1–626.10. Pls.' Reply at 1.

The defendants filed a motion in partial opposition to the plaintiffs' motion to enforce the settlement agreement. The defendants agree to the extent that the plaintiffs seek to reinstate the proceedings as to Mr. Hood and Mr. Smith, but contend that there was never an enforceable settlement agreement regarding re-enrollment. *Id.* at 1, 4. The defendants argue that the settlement was "exclusively financial" and that "it was always intended that the $625K promised to the plaintiffs was the full extent of the agreement reached." Defs.' Opp'n at 3, Ex. B ("Adams Decl.") at ¶ 14. The defendants maintain that "while the issue of allowing Plaintiffs Hood and Smith to re-enroll ... had been discussed during early mediation sessions, that issue was not discussed after April 17, 2001."

*Id.* Ex. A ("Grimaldi Decl.") at ¶¶ 5–6. The defendants therefore oppose the plaintiffs' motion to enforce an agreement that they contend does not exist. *Id.* at 5.

The defendants also argue that the court should enforce a settlement agreement as to Ms. Thomas. *Id.* at 5. Because Ms. Thomas does not qualify for retirement benefits since she has not been employed with the city for a sufficient amount of time, the defendants submit that "her interest in the settlement ... could only be financial." *Id.* The plaintiffs disagree, arguing that the "acceptance of the total settlement award was a joint and indivisible decision between the three plaintiffs." Pls.' Reply at 3. The plaintiffs therefore oppose enforcing the settlement as to Ms. Thomas to the exclusion of Mr. Hood and Mr. Smith. *Id.* The court now turns to the plaintiffs' motion to enforce a settlement agreement.

## III. ANALYSIS

### A. Legal Standard for the Enforcement of Settlement Agreements

State contract law governs the enforcement of settlement agreements. *Makins v. District of Columbia,* 277 F.3d 544, 547 (D.C.Cir.2002). In the District of Columbia, a complete enforceable contract exists when there is (1) an agreement as to all the material terms; and (2) an intention of the parties to be bound. *United States v. Mahoney,* 247 F.3d 279, 285 (D.C.Cir. 2001); *Kilpatrick v. Paige,* 193 F.Supp.2d 145, 152 (D.D.C.2002). "There must thus be an honest and fair 'meeting of the minds' as to all issues in a contract." *Simon v. Circle Assocs., Inc.,* 753 A.2d 1006, 1012 (D.C.2000) (quotation omitted); *see also Core–Vent Corp. v. Implant Innovations, Inc.,* 53 F.3d 1252, 1256 (Fed.Cir. 1995). The parties to a settlement agreement "must intend the words and acts which constitute their manifestation of as-

sent." *Simon*, 753 A.2d at 1012 (citation omitted).

■ Mutual assent "is most clearly evinced by the terms of a signed written agreement, but such a signed writing is not essential to the formation of a contract. The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds...." *Davis v. Winfield*, 664 A.2d 836, 838 (D.C.1995); *see also Makins*, 277 F.3d at 547. A district court cannot summarily enforce a settlement "until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir.2002) (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir.1983)); *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir.1995).

### B. The Parties Did Not Have a Meeting of the Minds on the Issue of Re-enrollment

■ In their motion to enforce a settlement agreement, the plaintiffs claim that the complete settlement includes both a monetary provision and a provision concerning re-enrollment into the defendants' retirement system. Pls.' Mot. at 7. The defendants counter that the parties never formed an enforceable settlement agreement because there was no mutual assent on the issue of retirement benefits. Defs.' Opp'n at 1. The court first addresses the issue of whether the parties formed a binding agreement under District of Columbia law.

■ A settlement agreement is enforceable when there is an "honest and fair 'meeting of the minds' as to all issues." *Simon*, 753 A.2d at 1012. The court rules that the parties clearly assented to a payment of $625,000 in exchange for the plaintiffs' dismissal of their claims. To wit, the defendants admit that "the parties settled on a sum of money" and the plaintiffs assert that "$625,000 was accepted by plaintiffs." Defs.' Opp'n at 2; Pls.' Mot. at 4.

■ This "manifestation of assent" did not exist, however, on the issue of re-enrollment. *Simon*, 753 A.2d at 1012 (citing *Hart*, 667 A.2d at 582–83); *see also Kay–R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 57 (2d Cir.1994) (stating that it is "the 'manifestation of mutual assent' that is important.") (quoting Restatement (Second) of Contracts §§ 22, 23 (1982)). The District of Columbia adheres to the "objective law of contracts," meaning that the court must look at the parties' objective manifestations of intent in interpreting settlement agreements. *Simon*, 753 A.2d at 1012. The defendants' objective acts indicate that the parties had not come close to finalizing the issue of re-enrollment. During discussions on the matter, the defendants informed the plaintiffs that "the government had issues with allowing the plaintiffs to participate in a retirement program during a time in which they were not working." Pls.' Mot. at 5. The plaintiffs fail to demonstrate that the defendants actually agreed to re-enrollment at the time of the putative settlement agreement, instead pointing to the defendants' original assurance that "no problems were anticipated." Pls.' Reply Ex. A ("Hood Decl") at ¶ 4. The defendants do not deny having re-enrollment discussions, but insist that they did not consider re-enrollment to be part of the settlement or the "second part of the negotiations." Defs.' Opp'n at 3, Ex. B ("Adams Dep.") at ¶ 9. The defendants' uncertainty in later discussions and their failure to order the personnel files and to initiate the re-enrollment process further support the defendants' contention that the parties did not mutually assent to re-enrollment. Pls.' Mot. at 5–6.

The plaintiffs claim that the retirement-deposit-application form confirms the defendants' intent to proceed with re-enrollment. *Id.* at 8–9. The plaintiffs admit, however, that they never completed the application because "it was indicated that completion of the application was unnecessary since the ordering of the personnel files, the first step, had not been completed." *Id.* at 6; *see also Hensley,* 277 F.3d at 541 (holding that the evidence was "ambiguous" as to whether a settlement agreement existed because the plaintiff merely looked at the settlement agreement but refused to sign it). The plaintiffs' apparent distrust and uncertainty as to the defendants' intentions further underscores the lack of mutual assent on the issue. Therefore, the court determines that the application form alone does not amount to a "meeting of the minds." *Simon,* 753 A.2d at 1012.

The absence of a written agreement further indicates that there was no mutual assent concerning re-enrollment. The D.C. Circuit has instructed that settlement agreements do not have to be in writing to be enforceable, and "the parties may orally agree upon the material terms and intend to be bound" by those terms. *Makins,* 277 F.3d at 547. In this case, however, the plaintiffs fail to show even the existence of an oral agreement. The plaintiffs' sole evidence of a "meeting of the minds" is the defendants' alleged statement that "no problems were anticipated," which one defense lawyer allegedly said a full six months before the parties reached the tentative agreement. Pls.' Reply Ex. A ("Hood Decl.") at ¶ 4. Since "the parties' acts at the time of the making of the contract are also indicative of a meeting of the minds," or lack thereof, the court must consider the defendants' uncertainty and failure to initiate re-enrollment along with the parties' statements. *Davis,* 664 A.2d at 838. Mutual assent "is most clearly evinced by the terms of a signed written agreement," especially where the evidence is ambiguous as to whether the parties reached an oral settlement. *Id.* The absence of a written agreement further underscores that the parties never reached a "meeting of the minds" to re-enroll the plaintiffs. *Simon,* 753 A.2d at 1012.

■ The plaintiffs also contend that "there were not substantial discussions about allowing plaintiffs to re-enroll and contribute a portion of their settlement award into the government's retirement plan" because D.C.Code § 1–626.10 affords them an "unconditional right" to such benefits. Pls.' Reply at 1. This provision states that "an employee ... who is removed or suspended without pay and later reinstated or restored to duty on the grounds that the removal or suspension was unwarranted or unjustified shall be entitled to resume immediately participation in the defined contribution plan." D.C.Code § 1–626.10. The court rejects this argument, however, because the case was never tried on the merits and the defendants have not admitted in court or in papers filed with the court that the suspension was "unwarranted or unjustified." *Cf. id.* The putative settlement deal was merely a tentative agreement under which the defendants offered a sum of money in exchange for a dismissal of the action.

In short, the course of settlement negotiations demonstrates that the parties never agreed on the same thing. Because the plaintiffs were always under the impression that any agreement would include both money and re-enrollment while the defendants always understood that the agreement only involved money, the parties never reached a meeting of the minds. *Simon,* 753 A.2d at 1012. Accordingly, the court cannot enforce an agreement when

the parties never actually reached one. *Hensley,* 277 F.3d at 540.

■ In terms of Ms. Thomas, the defendants argue that the court can enforce her part of the settlement since she is not eligible for retirement benefits and her interest "could only be financial." Defs.' Opp'n at 5. The plaintiffs counter that "such action would do violence to the unified front that plaintiffs have consistently presented throughout this litigation." Pls.' Reply at 4. The plaintiffs insist that "there is no basis in which to precisely determine the amount of Ms. Thomas' award since she did not agree to a specific sum of money." *Id.* At this point, the court agrees with the plaintiffs on this issue and does not enforce an agreement as to Ms. Thomas.

Having concluded that there was no binding settlement, the court will give the parties a final opportunity to resolve this case short of trial. In brief, because the defendants agree that a settlement on the monetary component did occur, the court will allow the parties to decide the course of this case. Specifically, the court will give the plaintiffs until September 9, 2002 to notify the court in writing as to whether they accept the defendants' offer of $625,000 without any discussion about their retirement status in exchange for dismissing their case in its entirety. If, however, the plaintiffs believe that their retirement status is an integral part of any settlement agreement, they shall notify the court by September 9, 2002 that they are officially rejecting the settlement agreement and the court will convene a status hearing soon thereafter to set this matter for trial.

## IV. CONCLUSION

For all these reasons, the court denies the plaintiffs' motion to enforce the settlement agreement. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 25 day of July, 2002.

### *ORDER*

#### DENYING THE PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of July, 2002, it is

**ORDERED** that the plaintiffs' motion to enforce the settlement agreement is **DE-NIED** unless the plaintiffs file a written notice with the court accepting the defendants' offer of $625,000 without retirement benefits by September 9, 2002.

**SO ORDERED.**