*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CV-1101

DAVID BROOKS, APPELLANT,

v.

MICHAEL ROSEBAR, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2014-CAB-8071)

(Hon. Maurice A. Ross, Trial Judge)

(Submitted September 19, 2017                    Decided June 27, 2019)

David Brooks, *pro se*, was on the brief.

*Wendell Robinson* was on the brief for appellees.

Before GLICKMAN, BECKWITH, and EASTERLY, *Associate Judges.*

GLICKMAN, *Associate Judge*: Appellant David Brooks sued appellees Michael Rosebar and Erin Rosebar for defamation in 2014 based on reviews they allegedly wrote online about his security camera business. The trial court entered a default against Ms. Rosebar as a sanction for violating court orders in the discovery process, and the case against Mr. Rosebar proceeded. During a

September 2016 court hearing, Mr. Brooks and Mr. Rosebar's counsel orally agreed to settle the case, but Mr. Brooks, proceeding *pro se*, made conflicting statements about whether he intended for the settlement to cover his claims against both Mr. and Ms. Rosebar. In a subsequent letter to the judge, Mr. Brooks alleged that he clarified that he had never intended to settle his claim against Ms. Rosebar, against whom he (mistakenly) believed he had obtained a default *judgment*. The court found, however, that Mr. Brooks had agreed to settle his claims against both of the Rosebars and dismissed the case with prejudice. In this appeal, Mr. Brooks asserts that the court violated his due process rights in so dismissing his case, in part because there was no "meeting of the minds" between the parties as to material terms of the proposed settlement. We agree that, on the record before us, there is insufficient evidence of a meeting of the minds. We therefore vacate the dismissal and remand for further proceedings.

## I.

The case before us began on December 18, 2014, when Mr. Brooks filed a defamation complaint against Michael and Erin Rosebar.[1] However, to understand

---

[1] Initially, Mr. Brooks also sued a third defendant, Ebonee Price; Ms. Price has been dismissed as a defendant and any claims against her are not relevant here.

the issues in the case, we must go back further—to 2007. That year, Mr. Brooks loaned the Rosebars $30,000, secured with a promissory note and a rental stream as collateral. The Rosebars never repaid the loan, and Mr. Brooks eventually won a judgment in Superior Court entitling him to the $30,000 plus interest.[2] Mr. Brooks spent years attempting unsuccessfully to collect on the judgment, during which time Mr. Rosebar filed numerous civil complaints against him, also unsuccessfully. On December 3, 2013, the court ordered that the civil clerk no longer accept claims by Mr. Rosebar against Mr. Brooks without leave of the court because those claims appeared to be "an attempt to use judicial process to bar Mr. Brooks from recovering a debt to which this Court has already determined that he is legally entitled."

Later that December, negative reviews of Mr. Brooks's security camera business, which had been operational for eight years, were posted online. These reviews alleged that Mr. Brooks "has stolen money from my family[,]" "does not hold . . . proper [business] license[s,]" is "using this legitimate business as a front for illegal, commercial, and personal loan sharking and predatory lending[,]" "is a criminal" and has been "taking pictures off the internet social media websites of

---

[2] *See Brooks v. Michael Rosebar et al.*, 2011 CA 002525B (D.C. Super. Ct. May 5, 2011).

your children." Mr. Brooks claims that after the reviews were posted, he received no new referrals from the Internet and his business closed within one year. In December of 2014, Mr. Brooks, believing that the Rosebars had posted the negative reviews, sued the Rosebars for defamation, seeking both injunctive relief and damages. He also requested as relief that the court "declar[e] the [r]eviews false and defamatory . . . ."

In connection with this case, Mr. Brooks attempted to depose Ms. Rosebar multiple times, but she either did not show up to or refused to answer questions at the scheduled depositions, notwithstanding court orders to comply. As a result, the court entered a default against Ms. Rosebar on May 19, 2016. Mr. Brooks did not move to have a default judgment entered against Ms. Rosebar, and no further actions were pursued as to that default.

On September 2, 2016, Mr. Brooks and the attorney Wendell Robinson, who had previously represented both Rosebars,[3] appeared in court for a motions date

---

[3] In his appeal, Mr. Brooks presents letters from Mr. Robinson to the Rosebars indicating that he was withdrawing from the case as their attorney on May 12, 2016. However, Mr. Robinson continued to appear in court and write motions on behalf of the Rosebars, and it is not clear from the record what the status of his representation was after that time.

that the court had set *sua sponte*. Neither of the Rosebars appeared. When the court inquired as to whom Mr. Robinson represented, he stated, "I'm representing only Mr. Rosebar because you've already entered a judgment, a default against his wife." In reality, no judgment had been entered against Ms. Rosebar. The court, however, did not clarify the status of the case against Ms. Rosebar.

After the parties and the court addressed two unsuccessful motions by Mr. Brooks, the court asked, "Mr. Brooks, you already have sixteen judgments against Mr. Rosebar?" and Mr. Brooks responded, "[y]es. I've, I offered to settle for $800. They said no." The court asked, "[i]f you walk away and *agree not to sue him* for five years, wouldn't he and his wife agree not to sue you for five years?" Mr. Robinson responded, "I certainly would recommend it."

Mr. Robinson then stated that he "would have given 800 bucks to get it over with." Mr. Brooks accepted the offer, saying, "[f]ine, fine. . . . Fine, I accept." Mr. Robinson said, "I'll give him a check. I'll write him a check." At that point, the court told the parties to "make sure you guys get it in writing."

We quote the exchange that followed in detail because it provides important context for assessing the question of whether the parties entered into a valid, enforceable settlement agreement:

MR. ROBINSON: Well, wait a minute, can we put it on the record right now, Your Honor?

THE COURT: Okay, what's the offer?

MR. BROOKS: $800.

MR. ROBINSON: I will write a check for you for $800 . . . *and that will dismiss this case against both Rosebars. Is that correct?*

MR. BROOKS: *Yes.*

MR. ROBINSON: Thank you. *And, and that means, Your Honor, that your judgment - -*

THE COURT: Okay, next - -

MR. ROBINSON: - - *will be set aside?*

MR. BROOKS: *No. It would dismiss the matters in dispute now.*

THE COURT: Well, it's only a default. It's not a judgment.

MR. ROBINSON: I understand.

THE COURT: It hasn't - - the judgment.

MR. ROBINSON: Okay.

THE COURT: Okay, 10 o'clock next Friday I want you both to be here to make sure it was done and the case is dismissed.

The court then told Mr. Robinson that he should bring a cashier's check to the next hearing and concluded the proceeding.

Prior to the next hearing, Mr. Brooks sent a letter *ex parte* to the court. The letter was never entered into the record. Nonetheless, the court referenced the letter at the next hearing. The court stated that Mr. Brooks's letter admitted that he had initially agreed to settle the case against Ms. Rosebar as well as Mr. Rosebar and that he had "made a mistake."[4] The court told Mr. Brooks, "you have to live with your mistake . . . [because] ignorance of the law is no excuse to repudiate your agreement."

The court also discussed the previous hearing, saying, "Mr. Brooks, we have the record. You said, I will accept; and Mr. Robinson said, we'll write the check, dismiss this case against both Rosebars, yes . . . and you agreed to that . . . that was our agreement, that everything would go away." Mr. Brooks asked, "[i]sn't the case against [Ms. Rosebar] over though?" The court responded:

> No. You got a default; so, that means that she couldn't
> put on any evidence and you still have to get a judgment.

---

[4] Because the letter is not in evidence, we do not rely on its purported contents. We note, however, that Mr. Brooks denies that the letter admitted that he had initially agreed to settle the claims against both Rosebars but then thought better of it. Rather, he claims that the letter explained that when he initially agreed that the settlement would dismiss all claims against both Rosebars, he thought that the claim against Ms. Rosebar had already been resolved through a default. He alleges that the letter stated that if he "incorrectly implied that [he] was willing to forfeit the default judgment in exchange for $800 . . . [he] misspoke."

> You would still have to have like a, a proof hearing. . . . [Y]our agreement was, on the record, against both of them, and, and I don't understand what you think you achieve by proceeding . . . .

Mr. Brooks continued to argue that he had never intended to settle the case against Ms. Rosebar. He told the court, "I didn't understand what you . . . were talking about" at the September 2 hearing. But the court found that Mr. Brooks had already "agreed to" settling his claims against both Rosebars at the previous hearing. The court announced that it was "enforc[ing] the agreement" and dismissing the case with prejudice. Mr. Brooks refused to accept the cashier's check proffered by Mr. Robinson because it "d[id] not represent what [he] believe[d] to be the agreement." Mr. Brooks added that it was reasonable "for a nonattorney not to know the difference between a default entry and a default judgment entry" and, therefore, to have been confused about which claims were still live.

Notwithstanding Mr. Brooks's rejection of the settlement check, the court maintained that "the case [wa]s still dismissed because [Mr. Brooks was] not complying with the settlement agreement." The court told Mr. Brooks, "to say you're a nonattorney is a misnomer because you've spent more time in court in the last five years than most [District of Columbia] Bar[red] attorneys, and certainly

any of them at the big downtown law firms. So, that's it." The court dismissed the case that day without issuing an opinion. Mr. Brooks moved to alter the judgment but the court denied the motion "because [Mr. Brooks] entered into an oral settlement agreement in open [c]ourt. Several days later, he had buyer's remorse. . . . Accordingly, once [Mr. Robinson] tendered the settlement check, the [c]ourt dismissed the case as settled, and so it is."

## II.

The outcome of this appeal rests on whether the trial court properly found that the parties had entered into a valid, enforceable settlement agreement. We review this question *de novo*.[5] "As a general rule, the validity of a settlement agreement is determined according to general principles of contract law."[6] "For there to be an enforceable contract, there must be mutual assent of each party to all the essential terms of the contract."[7] "This mutuality of assent is often referred to

---

[5] *Strauss v. NewMarket Global Consulting Grp.*, 5 A.3d 1027, 1032 (D.C. 2010).

[6] *Boks v. Charles E. Smith Mgmt., Inc.*, 453 A.2D 113, 117 (D.C. 1982); *see Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C. 2009).

[7] *Malone v. Saxony Coop. Apartments, Inc.*, 763 A.2d 725, 729 (D.C. 2000).

as a 'meeting of the minds.'"[8]  To assess whether there was such a "meeting of the minds," we consider whether the parties' objective acts manifested agreement as to each material aspect of the settlement agreement.[9]  If the parties "fail[] to agree on or even discuss an essential term" of a purported settlement, that failure may show that the parties did not mutually assent to the creation of a settlement.[10]  Further, "[a] contract's material terms . . . must be 'sufficiently definite' so that each party can be 'reasonably certain' about what it is promising to do or how it is to perform."[11]

The court cannot enforce a contract, including a settlement agreement, unless it can determine what the agreement is.  If there is a misunderstanding between the parties that goes to the very essence of the purported contract, then

---

[8]  *Id.*

[9]  *Hood v. District of Columbia*, 211 F. Supp. 2d 176, 180 (D.D.C. 2002) (applying D.C. contract law); *Simon v. Circle Assocs., Inc.*, 753 A.2d 1006, 1012 (D.C. 2000).

[10]  *Malone*, 763 A.2d at 729 (quotations omitted) (quoting *Owen v. Owen*, 427 A.2d 933, 937 (D.C. 1981)).

[11]  *Dyer*, 983 A.2d at 356 (quoting *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 370 (D.C. 1990)).

there is no contract to enforce.[12]  Here, at the time the court dismissed the case, there was a dispute between the parties regarding a fundamental term of the purported settlement agreement: whether the execution of the agreement would dismiss the case against only Mr. Rosebar or against both Rosebars.

This dispute is evidenced in the transcript of the hearing, and Mr. Brooks asserts that it was also evidenced in the text of his letter to the judge.  Because the letter was *ex parte*, was never entered into evidence, and has not been added to the record on appeal, we cannot consider its alleged contents.  Given Mr. Brooks's disagreement with the trial court's characterization of the letter, however, we also cannot rely upon the trial court's findings regarding the letter because there is no way to resolve the discrepancies without the full letter before us.  Thus, the

---

[12]  As the RESTATEMENT (SECOND) OF CONTRACTS § 20(1) (AM. LAW INST. 1981) puts it:

> There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and (a) neither party knows or has reason to know the meaning attached by the other; or (b) each party knows or has reason to know the meaning attached by the other.

*See also Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1239 (D.C. 1995) ("Where the parties fail to agree to all material terms, no contract is formed, even if the parties intended to be bound by their oral agreement . . . .").

transcripts of the hearings are the only evidence we may consider in determining whether the trial court properly found that the parties had entered into an enforceable settlement agreement regarding Mr. Brooks's claim against Ms. Rosebar.

The transcripts not only record the purported settlement, but also provide important context for the settlement discussion. At the outset of the hearing on September 2, 2016, Mr. Robinson told the court that a judgment had been entered against Ms. Rosebar, and so he was only representing Mr. Rosebar. Thus, going into the settlement discussion, it appeared that the only case that Mr. Robinson had the ability to negotiate was the claim against Mr. Rosebar. Immediately before negotiations began, the court framed the topic of a potential settlement as an option for resolving Mr. Brooks's claim against Mr. Rosebar. The court inquired, "Mr. Brooks, you already have sixteen judgments against Mr. Rosebar?" and Mr. Brooks responded, "Yes. I've . . . offered to settle for $800." The court then asked, "[i]f you . . . *agree not to sue him* for five years, wouldn't he and his wife agree not to sue you for five years?"

Mr. Robinson then said he would agree to settling for $800 and Mr. Brooks accepted. Mr. Brooks briefly agreed with Mr. Robinson's assertion that the case

would be dismissed against both Rosebars—but then disagreed that the judgment (actually a default) against Ms. Rosebar would be set aside, noting that he intended for the settlement to apply only to "the matters in dispute now" (i.e., the claim against Mr. Rosebar). The court relied on Mr. Brooks's initial "yes" answer to Mr. Robinson's question as to whether the case against both Rosebars would be dismissed in finding that the parties had entered into a valid settlement agreement.

On the record before us, there is insufficient evidence to establish that the parties had the requisite meeting of the minds to create a valid, enforceable settlement agreement. Although the parties *may* have agreed that the claim against Mr. Rosebar should be dismissed in exchange for $800, it appears that "they never reached an accord regarding another material part of the agreement"[13]—whether that same payment would also dispose of the claim against Ms. Rosebar. Mr. Brooks's statements in both hearings evinced confusion as to the status of his claim against Ms. Rosebar. His initial "yes" to the question of whether the settlement would dismiss the claims against both Rosebars must be viewed in the context of an ongoing settlement negotiation. Because the "yes" was quickly followed by a "no" and accompanied by a later discussion indicating that the "yes" was based on

---

[13] *Hood*, 211 F. Supp. 2d at 178.

a misunderstanding, there is a serious question as to whether the "yes" should hold *any* weight, let alone serve as the basis for a dismissal.[14]

We pause to note that, given Mr. Brooks's evident confusion and his position as a *pro se* litigant, the court should have "ma[d]e reasonable accommodations" to help Mr. Brooks "understand the proceedings,"[15] particularly the status of his claim against Ms. Rosebar, and should have given Mr. Brooks an opportunity to be heard in court when he continued to object to the imposition of a settlement agreement. Even in the absence of express confusion, courts should be wary of enforcing settlement agreements orally formed between a *pro se* litigant and an attorney, in which the *pro se* litigant had no opportunity to review the settlement agreement or consult with his or her own attorney before it was finalized.

---

[14] *See id.* at 180 (holding that there was no "manifestation of assent" to include a provision on a specific issue in a purported settlement agreement where the defendants had originally stated that they did not "anticipate[]" problems with including that provision, but later informed the opposing party that they "had issues with [the proposed provision]" and argued that they "did not consider [the provision] to be part of the settlement").

[15] D.C. Code of Judicial Conduct R. 2.6, cmt. 1A.

On the record of the settlement discussion before us, there is insufficient evidence indicating that the parties had achieved a meeting of the minds sufficient to create a valid, enforceable settlement agreement as to the claim against Ms. Rosebar.  The trial court's dismissal of Mr. Brooks's claims, therefore, cannot stand.  We reverse and remand for proceedings consistent with this opinion.


*So ordered.*